## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ASCENT ENERGY, LLC**

     **Plaintiff**,

v.                                                                              Cause No.

**REACH WIRELINE, LLC**

     **Defendant**.

## COMPLAINT

Plaintiff Ascent Energy, LLC ("Ascent" or "Plaintiff") for its Complaint against Defendant Reach Wireline, LLC ("Reach" or "Defendant") states and alleges as follows:

### SUMMARY OF THE ACTION

1.      Ascent, an oil and gas operator, brings this action to recover the damages it incurred when Reach breached its contract with Ascent by providing to Ascent defective equipment and incompetent services.

2.      In 2019, Ascent entered into a master service contract with Reach, a wireline contractor.  Wirelines are engineered cables measuring thousands of feet long that can be inserted into an oil and gas well to operate tools and assist in a variety of operations.  Under the parties' contract, Reach promised to supply to Ascent defect-free wireline and competent wireline services to support operations in which Ascent would use Reach's wireline equipment.  Unfortunately, Reach failed to fulfill its promises.

3.      In particular, on September 22, 2020, Reach supplied to Ascent wireline for use in perforating a wellbore at a well in Hobbs, New Mexico.  As Ascent lowered and then raised the

4807652.7

wireline in preparation for deploying the perforating "guns" attached to the wireline, and did so while following instructions and guidance from Reach's personnel, the wireline cable snapped at a depth of 7,000 feet underground and became trapped in the well.

4.      Over the following days, Ascent incurred more than $700,000 in costs to "fish" the remnants of Reach's wireline out of the well.

5.      This was no random accident.  An engineering report commissioned by Reach, issued the day after the incident, established that Reach provided a severely corroded wireline to Ascent, that this corrosion was the root cause of the wireline snapping, and that Reach *knew of the defect* when it supplied the wireline to Ascent.

6.      Reach's failure to provide equipment in good operating condition, in breach of its contractual obligations, damaged Ascent, and Ascent is entitled to recover those damages from Reach.

**PARTIES**

7.      Plaintiff Ascent Energy, LLC is a limited liability company incorporated in Delaware, with a principal place of business at 1125 17th Street, Suite 410, Denver, Colorado 80202.  Ascent, through the citizenship of its LLC members, is a citizen of Colorado, Switzerland, and Germany.

8.      Defendant Reach Wireline, LLC is a limited liability company incorporated in Delaware, with a principal place of business at 1321 Ranchers Legacy Trail, Fort Worth, Texas 76126.  Reach is a citizen of Massachusetts and Texas, though its LLC member Hastings Equity Partners, LLC.  Based on publicly available records, Reach is not a citizen of Colorado, Switzerland, or Germany.

**JURISDICTION AND VENUE**

9.      Pursuant to U.S. Const. art. III, § 2, and 28 U.S.C. § 1332(a)(1), this Court has subject-matter jurisdiction based on diversity of citizenship because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states, as described in Paragraphs 7 and 8.

10.     This Court's exercise of personal jurisdiction over Reach is consistent with New Mexico's long-arm statute and the due process clause of the Fourteenth Amendment.  Reach has sufficient contacts with the State of New Mexico and purposefully availed itself of the privilege of acting in this State by providing goods and services to oil and gas operators throughout the State.  Further, Ascent's causes of action arise from one such instance where Reach was providing goods and services in the State.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Ascent's claims occurred in the District of New Mexico.

**GENERAL ALLEGATIONS**

**A.      Reach Promises to Supply Defect-Free Wireline and Competent Services.**

12.     On August 23, 2019, Ascent, as Company, and Reach, as Contractor, entered into a Master Service Contract ("MSA") under which Reach agreed to supply to Ascent wireline and related equipment and services.  (*See* MSA, dated August 23, 2019 (incorporated and attached hereto as Exhibit 1).)

13.     In the MSA, Reach represented that it had "adequate equipment in good working order and fully trained personnel capable of efficiently operating such equipment and performing [wireline] services for Company."

14.    Further, Reach promised: "All work or services rendered or performed by Contractor shall be done with due diligence, in a good and workmanlike manner, using skilled, competent and experienced workmen and supervisors. All materials, equipment, supplies or manufactured articles furnished by Contractor . . . shall be free from apparent defects." (*Id.* at Sec. 2.3.)  Likewise, Reach agreed "to maintain [its] equipment in good operating condition at all times." (*Id.* at Sec. 2.4.)

15.    In exchange, Ascent promised to pay Reach "for the work and/or equipment or materials furnished … at the rate stipulated in the work orders provided for herein, subject to same being accepted by [Ascent] as fully complying with all the terms, conditions, specifications and requirements of this Agreement and such work orders." (*Id.* at Sec. 3.1.)

**B.    Reach's Wireline Snaps and Has To Be Fished Out of the Well.**

16.    In or about September 2020, pursuant to the terms of the MSA, Reach agreed to provide Ascent with wireline and related equipment and services at the Big Moose Federal Com 604H Well (the "Well") near Hobbs, New Mexico.

17.    On September 22, 2020, Ascent was using wireline furnished by Reach and relying on guidance from Reach personnel to perforate the wellbore as part of fracking operations at the Well.

18.    While in the process of raising the wireline to shoot the first stage of perforating "guns" attached to the wireline, the wireline's surface tension approached 3,100 pounds.

19.    Ascent notified Reach of the surface tension.  Reach personnel indicated that the wireline surface tension could be increased to 5,000 pounds and told Ascent to continue pulling the wireline.

20.    Ascent resumed pulling the wireline.  When the surface tension reached 4,100 pounds, the wireline snapped (the "Incident").

21.    The broken wireline remained in the Well at a depth of approximately 7,000 feet below ground.

22.    Ascent and several third-party contractors proceeded to "fish" the remnants of the wireline out of the Well.  In doing so, Ascent incurred over $700,000 in costs.

**C.    The Schlumberger Report Establishes Reach's Culpability.**

23.    On September 23, 2020, the day after the Incident, Schlumberger Limited ("Schlumberger") issued a report regarding the Incident, commissioned by Reach.  (*See* Schlumberger Report, dated September 23, 2020, attached hereto as Exhibit 2.)

24.    The Schlumberger Report concluded that Reach supplied a highly (and visibly) corroded and damaged wireline that was prone to further damage.  For example, the Report observed a "2-3 in" chip missing from the outer jacket of the wireline.  The Report likewise described "several damages … along cable sample" and noted "[s]evere pitting … on all wires" in the break end sample as well as "severe corrosion" and "white rust" on the wireline.

25.    Equally important, the Schlumberger Report stated that two months before the Incident, Reach discovered "[t]he chip of jacket missing ≈2-3-in … at around the same depth where the cable broke," but did nothing to repair the jacket damage.  The Report further observed that Reach representatives at the Well site "found the outer armors looked corroded, were extremely fragile, and would break easily when bent outwards…."

26.    Finally, the Schlumberger Report directly attributed the Incident to the damage that Reach already knew about, concluding:  "Since that jacket damage was not repaired, its [sic] very likely that armor damage and corrosion started at this specific cable depth … and developed over

time…. Outer armors were likely weakened over time from mechanical abrasion and corrosion…. Root cause of this failure can be attributed to armor corrosion."

27.    In other words, despite being fully aware of the damage to its wireline, and despite promising to provide defect-free wireline and competent services, Reach decided to furnish the damaged wireline to Ascent and even vouched for its durability during operations.

**D.    Having Breached the MSA, Reach Must Compensate Ascent.**

28.    Over the following months, Ascent requested, through several letters, that Reach compensate Ascent for the fishing costs Ascent incurred because of Reach's conduct.  Reach has refused to do so.

29.    Instead, Reach argues that the MSA's indemnity and release provisions shield Reach from liability.  The express terms of those provisions, however, make clear they either do not apply or do not shield Reach from liability on these facts.

30.    Additionally, the laws of both New Mexico (where the Incident occurred) and Texas (which laws the parties chose to govern the MSA) preclude enforcement of any contractual provision that would, through indemnity, shield Reach from liability for its own negligent conduct. *See, e.g.*, N.M. Stat. §§ 56-7-1, *et seq.*; Tex. Civ. Prac. & Rem. Code §§ 127.001, *et seq*.

31.     Accordingly, Ascent is entitled to recover from Reach all costs and damages incurred that resulted from Reach's misconduct and breach of the MSA.  The precise amount of damages will be proven at trial.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**

32.    Ascent hereby incorporates by reference all allegations set forth above as if fully set forth herein.

33.     The MSA is a valid contract whereby Reach was to provide wireline and related equipment and services in exchange for payment from Ascent.

34.     Ascent has performed all valid obligations under the MSA.

35.     Reach breached the MSA by, among other actions, providing defective wireline and incompetent services.

36.     Ascent sustained damages as a result of Reach's breach.

## SECOND CLAIM FOR RELIEF
### Breach of Warranties

37.     Ascent hereby incorporates by reference all allegations set forth above as if fully set forth herein.

38.     Reach made express and implied affirmations of fact and promises relating to the quality and fitness of its wirelines and its services.

39.     These affirmations and promises became embodied in the MSA, the parties' specific agreement with respect to work at the Well, and the parties' general bargain.

40.     Ascent relied on these affirmations and promises in selecting Reach as a contractor for equipment and services at the Well.

41.     Reach's equipment and services did not comply with the affirmation and promises.

42.     Ascent was damaged by Reach's nonconforming equipment and services by being forced to fish Reach's wireline out of the Well, and those nonconforming equipment and services were the proximate cause of such damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ascent respectfully requests that the Court enter judgment in its favor and against Defendant Reach and grant relief as follows:

A.      Damages against Reach caused by Reach's breach of contract and breach of warranties in an amount to be proven at trial;

B.      An award of costs and fees, including attorneys' fees, to the fullest extent permitted by law;

C.      Pre-judgment and post-judgment interest to the extent permitted by law;

D.      Such further relief as the Court deems proper.

Plaintiff Ascent hereby demands a jury trial on all issues so triable.

Dated: April 9, 2021

*s/ Kathryn Brack Morrow*
_____

Kathryn Brack Morrow
MANN MORROW, PLLC
665 E. University Ave., Suite C
Las Cruces, NM 88005
Telephone:  (575) 440-0300
Facsimile:  (915) 271-8950
Email:  katy.morrow@mannmorrow.com

Mark Champoux (*pro hac vice* forthcoming)
Daniel A. Richards (*pro hac vice* forthcoming)
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado, 80202
Telephone:  303.892.9400
Facsimile: 303.893.1379
Email: mark.champoux@dgslaw.com
          daniel.richards@dgslaw.com

*Attorneys for Plaintiff Ascent Energy, LLC*