IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ASCENT ENERGY, LLC,

      Plaintiff,

      vs.                                                                       2:21-cv-00326-KWR-CG

REACH WIRELINE, LLC,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon the Defendant's Motion to Dismiss (**Doc. 12**). Having reviewed the parties' pleadings and the relevant law, the Court finds that Defendant's motion is not well-taken and, therefore, is **DENIED**.

### BACKGROUND

This is a contract dispute stemming from oil and gas fracking operations. Plaintiff operated a well, and Defendant agreed to provide wireline services for the well. Plaintiff alleges that Defendant provided a defective wireline for use during its well operations. A wireline is a cable thousands of feet long used to lower equipment into a well. **Doc. 21 at 1.** During the well operations, the line snapped. It allegedly cost Plaintiff more than $700,000 to fish the debris out of the well.

The parties entered into a Master Services Agreement ("MSA"). In the agreement, Defendant gave several warranties, and agreed to "maintain [its] equipment in good operating condition at all times." *Id.* at ¶ 14. Defendant represented that it had "adequate equipment in good

working order and fully trained personnel capable of efficiently operating such equipment and performing [wireline] services for" Plaintiff. *Id.* at ¶ 13

In September 2020, Defendant provided Plaintiff with wireline, equipment, and services for use at a well near Hobbs, New Mexico.

Plaintiff alleges that the wireline was visibly damaged and corroded, and that Defendant knew that the wireline was defective. Despite this defect, Defendant allegedly advised Plaintiff that it could increase the tension on the wireline from 3,100 pounds to 5,000 pounds. **Doc. 1 at ¶ 18-19.** The wireline subsequently snapped. Plaintiff spent approximately $700,000 to fish the wireline from the well.

Plaintiff alleges that the day after the incident, Schlumberger Limited issued a report commissioned by Defendant. The report concluded that Defendant supplied a highly and visibly corroded and damaged wireline. The report noted there was a 2-3 inch chip missing from the outer jacket of the wireline. It noted damage along the wireline, including severe pitting on all wires, severe corrosion, and white rust on the wireline. *Id.* **at ¶ 23-24.** The report stated that Defendant's representatives at the well site "found the outer armors looked corroded, were extremely fragile, and would break easily when bent outwards…" *Id* **at ¶ 25**. The report concluded that "since that jacket damage was not repaired, its[sic] very likely that armor damage and corrosion started at this specific cable depth… and developed over time… outer armors were likely weakened over time from mechanical abrasion and corrosion… root cause of this failure can be attributed to armor corrosion." *Id.* at **¶ 26, 27.** Plaintiff alleged that Defendant was aware of the damage to the cable but decided to furnish it to Plaintiff anyway.

Plaintiff asserts the following claims:

Count I:  Breach of Contract

Count II: Breach of Warranty

Defendant filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  **Doc. 12.**

## LEGAL STANDARD

Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("*Iqbal*").  As such, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"). All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party."  *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014).  In ruling on a motion to dismiss, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice.  *Twombly*, 550 U.S. at 555.

## DISCUSSION

Defendant argues that indemnity provisions in the MSA prohibit Plaintiff from bringing the breach of contract and warranty claims.  Defendant asserts that under these indemnity provisions, Plaintiff agreed to release Defendant for all costs incurred to fish Defendant's broken wireline from the well.  The Court disagrees, and at this procedural posture, declines to dismiss the claims on this basis.

The MSA provides that Texas law applies.  **Doc. 1-1 at § 10.3.**  The parties generally appear to agree that Texas law applies in construing the contract.  *See* **Doc. 21; Doc. 12** (applying Texas law).  Under Texas law, "[i]n construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). A contract's words should be ascribed their "plain, ordinary, and generally accepted meaning." *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 808 (Tex. 2012) (internal quotation marks omitted). A court must "consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *J.M. Davidson*, 128 S.W.3d at 229. "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id*. At the motion to dismiss stage, if a court "cannot say with certainty that [a party's] breach-of-contract claims are defeated by the plain language of the [contract]," the motion to dismiss should be denied. *U.S. Enercorp, Ltd. v. SDC Mont. Bakken Exploration, LLC*, 966 F. Supp. 2d 690, 708-09 (W.D. Tex. 2013).

Plaintiff alleges that Defendant breached the terms of the MSA and breached implied warranties.  Defendant asserts that the indemnity provision in Section 7.4 of the MSA releases the claims in this case.  Section 7.4 provides as follows:

> SUBJECT TO CONTRACTOR'S INDEMNITY OBLIGATIONS IN SECTION 7.2, COMPANY SHALL RELEASE CONTRACTOR GROUP FROM AND PROTECT, INDEMNIFY, DEFEND AND HOLD HARMLESS CONTRACTOR GROUP FROM ANY AND ALL CLAIMS RELATED TO OR IN CONNECTION WITH THE AGREEMENT AND REGARDLESS OF FAULT FOR:
>
> (i)   LOSS OF OR DAMAGE TO ANY WELL OR HOLE (INCLUDING, WITHOUT LIMITATION, THE COST OF RE-DRILL);
> (ii)  BLOWOUT, FIRE, EXPLOSION, CRATERING OR ANY UNCONTROLLED WELL CONDITION (INCLUDING, WITHOUT LIMITATION, THE COSTS TO CONTROL A WILD WELL AND THE REMOVAL OF DEBRIS); OR

    (iii) DAMAGE TO ANY RESERVOIR, GEOLOGICAL FORMATION OR UNDERGROUND STRATA OR THE LOSS OF OIL AND GAS THEREFROM.

**Doc. 1-1 at 7.** In other words, under section 7.4 of the MSA Plaintiff agreed to indemnify or release Defendant for the three categories of damages listed in (i)-(iii).

  For the reasons stated by the Plaintiff, the Court does not believe it is appropriate to dismiss this case by applying the indemnity provisions at this time. **Doc. 21.** It appears that Plaintiff's allegations do not fall into any of the three categories (Section 7.4 (i) –(iii)) for which the indemnity provision applies. For example, based on the allegations before the Court, Plaintiff has not specifically pled that the $700k in damages were the result of a loss of or damage to a well. Moreover, none of the allegations in the complaint assert that the well was damaged. The complaint does not appear to allege that the damages were caused by an uncontrolled well condition, and Plaintiff did not plead that a reservoir was damaged, or oil and gas lost.

  Moreover, Section 8.1 of the MSA does not appear to apply to the allegations in the complaint. That section provides:

RESPONSIBILITY FOR LOSS OR DAMAGE TO EQUIPMENT AND MATERIALS

> 8.1 CONTRACTOR'S EQUIPMENT. Notwithstanding the provisions of section 7.2 to the contrary and regardless of fault of contractor group, excluding contractor group's gross negligence or willful misconduct, company shall assume liability at all times for damage to or destruction of contractor group's downhole equipment while in the hole or in use and below the wellhead… company shall pay or reimburse contractor for the reasonable, specific and documented repair costs or the like-kind replacement value of equipment of similar quality if such equipment is damaged beyond repair.

This provision appears to place the responsibility for loss of Defendant's equipment on Plaintiff, unless Defendant acted with gross negligence or committed willful misconduct. Here, Plaintiff has pled that Defendant engaged in gross negligence or willful misconduct. Moreover, this provision appears to allocate damages to Defendant's equipment. Plaintiff alleges that the

5

$700,000 damages were the cost of removing the debris from the well and has not expressly pled that this amount include damages to Defendant's equipment.

The penultimate sentence of Section 8.1 provides: "Company shall assume the entire responsibility for operations in which Company Group or a third-party fish or attempt to fish for the equipment of any member of Contractor Group or perform any operation that may jeopardize the retrieval or the integrity of any such equipment." MSA § 8.1.  The Court agrees with Plaintiff that this does not appear to be an indemnity provision.  **Doc. 21 at 15.**  Even if it were an indemnity provision, the Court believes it must be read together with the rest of section 8.1, which provides that Plaintiff does not assume liability if Defendant acted with gross negligence.

For the reasons stated above, the Court declines to dismiss the claims in this case as barred under indemnity or release provisions.  Because the Court declines to dismiss the claims in this case, it declines to opine on whether the indemnity provisions are void under the New Mexico Anti-Indemnity Act, NMSA 1978 § 56-7-2.

**IT IS THEREFORE ORDERED** that the Defendant's Motion to Dismiss **(Doc. 12)** is hereby **DENIED** for reasons described in this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS**
**UNITED STATES DISTRICT JUDGE**